**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: ) | Case No. 13-02506-dd |
| ) | |
| John Woodrow Holt, III and Carole Ann ) | Chapter 11 |
| Cox Holt, ) | |
| ) | |
| Debtors. ) | |
| ) | |

### ORDER ON MOTION FOR RELIEF FROM STAY AND OBJECTION TO EXEMPTIONS

This matter is before the Court on a motion for relief from stay filed by First Citizen Bank and Trust Company, Inc. ("First Citizens") on June 21, 2013, and an objection filed on June 21, 2013, to exemptions claimed by the debtors, John Woodrow Holt, III ("Mr. Holt") and Carole Ann Cox Holt ("Ms. Holt") (collectively, the "Holts"). The Holts responded in opposition to both the motion for relief from stay and the objection to their claimed exemptions. The Court held a hearing on July 23, 2013. Based on the evidence admitted and the arguments presented, the Court hereby issues the following findings of fact and conclusions of law:[1]

### FINDINGS OF FACT

1. On April 29, 2013, the Holts filed their petition for relief under chapter 11 of the Bankruptcy Code.

2. The Holts each own a 50% membership interest in two South Carolina limited liability companies: Low Country Land, LLC ("Low Country") and Pamplico Highway Development, LLC ("Pamplico Highway"). Low Country and Pamplico Highway were

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are adopted as such.

1

previously debtors-in-possession in this Court, Case No. 11-07554-dd (Low Country) and Case No. 11-04387-jw (Pamplico Highway).

3. First Citizens is the holder of three judgments against the Holts which resulted from their guarantees of two commercial loans to Pamplico Highway and a third commercial loan to Low Country. The judgments were entered in three actions filed in Florence County in the Court of Common Pleas to foreclose on real estate owned by Pamplico Highway and Low Country and to collect on the Holts' guarantees: (i) *First Citizens Bank and Trust Co., Inc. v. Low Country Land, LLC et al.*, Case No. 2011-CP-21-1765 ("Case No. -1765"); (ii) *First Citizens Bank and Trust Co., Inc. v. Pamplico Highway Development, LLC et al.*, Case No. 2011-CP-21-1680 ("Case No. -1680"); and (iii) *First Citizens Bank and Trust Co., Inc. v. Pamplico Highway Development, LLC et al.*, Case No. 2011-CP-21-1681 ("Case No. -1681").

**Case No. -1765**

4. On September 28, 2011, the Clerk of Court for Florence County entered an Order of Reference in Case No. -1765 which indicates that, pursuant to Rule 53(b) of the South Carolina Rules of Civil Procedure, the case is referred to the Honorable Haigh Porter, Special Referee for Florence County. First Citizens' ex. 1. The Order of Reference in Case No. -1765 states Mr. Porter:

> shall exercise all power and authority which a circuit judge sitting without a jury would have, including but not limited to, making findings of fact and conclusions of law; directing entry of final judgment in this action under Rule 53(b) of the South Carolina Rules of Civil Procedure; hearing any issues, including motions, after sale or judgment; issuing any and all Orders and Supplemental Orders, Writs of Assistance and hearing any issues involving possession and/or removal of property and appraisal proceedings under Section 29-3-360, *et seq*. of the South Carolina Code. Pursuant to Rule 53(b) of the South Carolina Rules of Civil Procedure, any appeal from the final judgment entered by the Special Referee shall be to the Supreme Court or the Court of Appeals as provided by the South Carolina Appellate Court Rules.

2

5. By Order of Judgment as to John W. Holt and Carole A. Holt entered on February 6, 2012, First Citizens obtained a judgment against the Holts in Case No. -1765 in the amount of $628,189.25, plus interest. First Citizens' ex. 2.

**Case No. -1680**

6. On April 3, 2012, First Citizens obtained an Order of Judgment as to John W. Holt and Carole A. Holt in Case No. -1680 in the amount of $1,240,891.37, plus interest. First Citizens' ex. 8. On April 20, 2012, a Supplemental Order as to Attorneys' Fees as to John W. Holt and Carole A. Holt was entered which awarded First Citizens an additional $8,200 in attorneys' fees and increased the judgment amount to $1,249,091.37, plus interest. First Citizens' ex. 9.

**Case No. -1681**

7. On April 3, 2012, First Citizens obtained an Order of Judgment as to John W. Holt and Carole A. Holt in Case No. -1681 in the amount of $1,676,800.54, plus interest. First Citizens' ex. 12. On April 20, 2012, a Supplemental Order as to Attorneys' Fees as to John W. Holt and Carole A. Holt was entered which awarded First Citizens an additional $7,500 in attorneys' fees and increased the judgment amount to $1,684,300.54, plus interest. First Citizens' ex. 13.

**Supplemental Proceedings**

8. After obtaining its judgment, First Citizens commenced supplemental proceedings against the Holts in Case No. -1765. On May 31, 2012, Mr. Porter, as Special Referee, entered a Rule to Show Cause requiring the Holts to appear for supplemental proceedings on June 28, 2012. First Citizens' ex. 3.

9. First Citizens also commenced supplemental proceedings in Case No. -1680 and Case No. -1681. On May 18, 2012, the Court of Common Pleas for Florence County entered rules to show cause in Case No. -1680 and Case No. -1681, requiring the Holts to appear for supplemental proceedings on July 11, 2012. First Citizens' exs. 10, 14.

10. Ms. Holt was unable to appear at the June 28, 2012 hearing held pursuant to the Rule to Show Cause the Special Referee entered in Case No. -1765.

11. At the June 28, 2012 hearing, counsel for First Citizens, Mr. Moore, and counsel for the Holts, Mr. Mikell, indicated on the record that they had reached an agreement as to procedural matters and would be submitting an order to refer supplementary proceedings in Case No. -1680 and Case No. -1681 to Mr. Porter so they could be consolidated with Case No. -1765. Tr. of June 28, 2012 Hearing at 4-5 (First Citizens' ex. 4).

12. On July 16, 2012, the Court of Common Pleas for Florence County entered an Order of Reference as to Supplemental Proceedings as to John W. Holt, III and Carole A. Holt in Case No. -1680 and Case No. -1681. First Citizens' ex. 11, 15. These orders referred Case No. -1680 and Case No. -1681 to "the Honorable Haigh Porter, Special Referee for Florence County, to take the testimony and other evidence offered and to issue a final order; to make findings of fact and conclusions of law; to dispose of any and all issues and enter a final order with appeal, if any, directly to the South Carolina Supreme Court; and to hear any issues as to the Rule to Show Cause."[2] *Id.*

---

[2] The order of reference in Case No. -1680 refers the case to "the Honorable Haigh Porter, Special Referee for Florence County, to take the testimony and other evidence offered and to issue a final order; to make findings of fact and conclusions of law; to dispose of any and all issues and enter a final order with appeal, if any, directly to the South Carolina Supreme Court; and to hear any issues *after* as to the Rule to Show Cause." First Citizens' ex. 11 (emphasis added). The only difference between the orders of reference in Case No -1680 and Case No. -1681 is the word "after." Neither party has asserted this difference in the two orders

4

13. The Special Referee entered his Order as to Supplemental Proceedings in Case No. -1765 on July 18, 2012, and signed on July 9, 2012, which stated that counsel for the parties:

> agreed to (1) consent to the referral of Supplemental Proceedings scheduled in *First Citizens Bank and Trust Co., Inc. vs. Pamplico Highway Development* (Civil Action No. 2011-CP-21-1680 and 2011-CP-21-1681); (2) the Supplemental Proceedings hearing for Carole Holt will be continued to a mutually agreed upon time to accommodate her in connection with her work schedule; and (3) any and all Supplemental Proceedings in this action or the above two referenced actions will be applicable to all three actions.

First Citizens' ex. 5.

14. Further, pursuant to the Order as to Supplemental Proceedings, the Special Referee granted First Citizens a charging lien on Mr. Holt's 50% membership interest in Low Country. *Id.* at ¶4.

15. On July 25, 2012, the Special Referee held the continued hearing on the supplementary proceedings in which Ms. Holt appeared along with Mr. Holt. As a result of the hearing, the Special Referee entered its Order Appointing Receiver for the Holts on July 31, 2012. First Citizens' ex. 6. The introductory paragraph of the Order Appointing Receiver states:

> Since the previous hearing, Orders from the Circuit Court have been entered referring *First Citizens Bank and Trust Company, Inc. v. Pamplico Highway Development LLC, et al.* (Civil Action No. 2011-CP-21-1680 and 2011-CP-21-1681) ("Pamplico Judgments," collectively with the Low Country Judgment, the "Judgments") to the undersigned, as Special Referee, in connection with conducting supplemental proceedings in those matters. These referrals were with the consent of counsel for [First Citizens] and counsel for John W. Holt III and Carole A. Holt . . . and these parties have also consented to have this supplemental proceeding hearing applicable to each of the three matters.

*Id.*

16. In the Order Appointing Receiver, the Special Referee ordered that First Citizens had "levied against all assets of John W. Holt, III and Carole A. Holt except as to their wages

---

has any bearing on the issues before the Court.

5

and any applicable exemption as provided by Section 15-41-30, Code of Laws of South Carolina. *Id.* at ¶2. The Special Referee also granted First Citizens a charging lien on Ms. Holt's 50% membership interest in Low Country, in addition to that previously granted on Mr. Holt's interest. *Id.* at ¶4. Additionally, the Special Referee placed the Holts in receivership but excluded from the receivership "(1) wages of Mr. and Mrs. Holt, and (2) exemptions as set forth in Section 15-41-30 Code of Laws of South Carolina . . . ." *Id.* ¶6.

17. First Citizens asserts that all Orders entered in the supplemental proceedings in Case No -1765 apply to Case No. -1680 and Case No. -1681 pursuant to the Order as to Supplemental Proceedings (First Citizens' ex. 5) and Order Appointing Receiver (First Citizens' ex. 6).

**Low Country's Chapter 11 Case**

18. On December 7, 2011, Low Country filed a petition for relief under chapter 11, which was assigned Case No. 11-07554-dd. On June 26, 2012, Low Country filed its plan of reorganization ("First Plan") which attempted to effectuate the sale of the Low Country's assets to CJ Development, which is an entity owned by two of the Holts' children, Catherine M. Holt and John W. Holt, IV, for a purchase price of $825,000. First Citizens objected to the First Plan on two primary grounds: (1) the Holts lacked authority to act for Low Country due to the appointment of the receiver and (2) inadequacy of purchase price, which evidenced a lack of good faith and did not comply with the requirements of Section 1129(a)(7). Following a contested confirmation hearing, on September 7, 2012, the Court entered its Order denying confirmation of Low Country's First Plan. In the Order, the Court found the Holts had authority and could continue to "exercise their rights as members until [October 28, 2012]," 90 days after the appointment of the receiver, at which time dissociation occurs pursuant to S.C. Code Ann. §

6

33-44-601(7)(iv).[3] *In re Low Country Land, LLC*, Case No. 11-07554-dd, docket # 77, p. 5. Nonetheless, the Court agreed with First Citizens that the purchase price was inadequate and held the First Plan was not confirmable under Section 1129 because the value of the Debtor's commercial real estate alone was at least $1,000,000.

19.    After a series of modified plans and another objection to confirmation by First Citizens, Low Country ultimately filed its Sixth Modified Plan of Reorganization Dated October 18, 2012, and entered on October 19, 2012, which was accepted by First Citizens and confirmed by the Court pursuant to its Order Finally Approving Disclosure Statement and Confirming Plan entered on October 22, 2012. The plan confirmed on October 22, 2012, consists of the plan filed on September 11, 2012, with amendments filed on October 17, 2012, and October 19, 2012 ("Confirmed Plan"). The disclosure statement finally approved in the October 22, 2012 Order was filed on September 11, 2012 ("Disclosure Statement"). Under the Confirmed Plan, the terms of the proposed sale to CJ Development were modified to provide that the Holts' equity was essentially replaced with a note ("CJ Note") payable by CJ Development to Low Country and secured by a second mortgage on the real estate conveyed to CJ Development. The principal amount of the CJ Note is $257,357, it is amortized over 20 years, and due in full at maturity in 7 years. The monthly payments on the CJ Note are $1,560 and were scheduled to commence on December 30, 2012. The Confirmed Plan also required the CJ Note to be personally guaranteed by CJ Development's members, Catherine Holt and John Holt, IV. Confirmed Plan, admitted as First Citizens' ex. 16; CJ Note, admitted as First Citizens ex. 17.

20.    The Sixth Modified Plan of Reorganization Dated October 18, 2012, states that the interests of "equity security holders" of Low Country re-vest at confirmation.

---

[3] It appears the October 28, 2012 dissociation date listed in the September 7, 2012 Order should have been October 29, 2012.

21. The Disclosure Statement defines "equity interest holders" as "parties who hold an ownership interest (i.e., equity interest) in [Low Country]" and states that "[i]n a limited liability company ("LLC"), the equity interest holders are the members." *In re Low Country Land, LLC*, Case No. 11-07554-dd, docket #82, p. 9.

22. The Disclosure Statement also indicates that Low Country "will be dissolved after confirmation and the closing of this case." *Id.*, p. 4.

23. With respect to post-confirmation management of Low Country, the Disclosure Statement provides that "[o]ther than executing the necessary documents to affect the transfer of [Low Country's] assets and to dissolve the company with the South Carolina Secretary of State, there will be no post confirmation activity. John W. Holt, II will manage the Debtor and execute the necessary documents."[4] *Id.*, p. 10.

24. Included in the Disclosure Statement is an addendum on the effect of the appointment of a receiver for the Holts, which indicates that a receiver had been appointed and dissociation of the Holts' membership interests in Low Country would occur if they failed to vacate or stay the receiver's appointment within 90 days of the appointment date. This addendum further states:

> The rights of a creditor of a member[']s interest are set out in S.C. Code § 33-44-504. The rights of First Citizens Bank resulting from the receivership are to collect the distributional interests of the [m]embers and to foreclose on its lien on the distributional interest. If foreclosure occurs, then the purchaser at the foreclosure sale becomes a transferee and may succeed to the rights of a member. See S.C. Code of Laws § 33-44-504.
> [Low Country] believes that the appointment of the receivership will have no impact on the Chapter 11 plan that the Debtor has filed. Specifically, the plan provides for the sale of the Debtor's assets with the distribution to be made to the creditors. The creditors will receive their claims in full, plus interest.

---

[4] "John W. Holt, II" appears to be a typographical error, as Low Country probably meant to list John W. Holt, III here.

> It is expected that the closing on the sale of the Debtor's assets will occur before October 23, 2011, which is the date that disassociation will occur.[5]

*Id.*, pp. 33-34.

25. Following the closing of the sale from Low Country to CJ Development, on January 25, 2013, Low Country filed its Final Report and Application for Final Decree. First Citizens objected to the Application for Final Decree, seeking to preserve and enforce the right of the receiver for the Holts to ultimately collect the CJ Note. On March 7, 2013, the Court entered its Final Decree in the Low Country case and expressly preserved First Citizens' ability to litigate the status of Holts' membership rights in Low Country and the collection of the CJ Note, stating:

> The status of the members of the Debtor is not determined by any language in the plan or this Order, the rights of CJ Development, LLC under the plan and of the receiver in connection with the payments due under the note from CJ Development, LLC to the Debtor are not determined by this Order, and the parties' ability to litigate these issues is preserved.

26. Pursuant to the Final Decree, the Low Country bankruptcy case was closed.

27. Low Country's note in favor of First Citizens was paid in full at closing, with the exception of attorney's fees in the amount of $18,655.55.

**Pamplico Highway's Chapter 11 Case**

28. Pamplico Highway filed its petition for relief under chapter 11 on July 12, 2011. On April 2, 2012, the chapter 11 plan filed by Pamplico Highway on February 24, 2012, was confirmed.

29. First Citizens filed an election for its claims to be treated under 11 U.S.C § 1111(b). The confirmed chapter 11 plan requires monthly payments in the amount of $5,179.60

---

[5] "October 23, 2011," appears to be a typographical error since 90 days from the entry date of the Special Referee's Order Appointing Receiver was October 29, 2012.

9

for the first 60 months on the debt in Case No. -1680, and monthly payments in the amount of $5,580.53 for the first 60 months on the debt in Case No. -1681. Each payment will increase by $500.00 per month in months 61 – 120, after which the indebtedness becomes due and payable in full. Because of its election under 11 U.S.C § 1111(b), the Plan provides for full payment of First Citizens' claims against Pamplico Highway, with interest to be paid on the secured portion of the claims.

**Status of Judgments and State Court Proceedings at Petition Date**

30.  None of the state court orders or judgments referenced above were appealed by the Holts.

31.  First Citizens asserts the balances due on the judgments as of the Holts' Petition date are as follows: (a) $18,655.65 on the judgment entered in Case No. -1765; (b) $1,294,124.06 on the judgment entered in Case No. -1680; and (c) $1,706,278.12 on the judgment entered in Case No. -1681. The Holts' counsel indicated at the hearing that the Holts believe the balances are $1,118,251.08 on the judgment entered in Case No. -1680 and $1,539,206.71 on the judgment entered in Case No. -1681.

32.  On April 8, 2013, First Citizens filed its Notice of Motion and Motion for Dissolution of Low Country Land, LLC and Modification of Receiver's Order ("Motion for Dissolution") in the Court of Common Pleas for Florence County, which sought to dissolve Low Country and have the Holts' interests in that entity, along with the CJ Note payments, transferred to the receiver. First Citizens' ex. 7. First Citizens requested that the receiver "be ordered and authorized to obtain possession of the [CJ Note] and have exclusive control and right to collect the Note as Receiver for the sole members of LLC, John Holt, III and Carole A. Holt . . . ." A

hearing on the Motion for Dissolution was scheduled for April 30, 2013, but did not go forward after the Holts filed their petition in this case on April 29, 2013.

33. The Holts have executed a "Waiver of Winding Up of Company's Business" with respect to Low Country and Pamplico Highway. Holts' ex. A.

34. The Holts' counsel stated that, on June 8, 2012, the Internal Revenue Service filed a lien against John W. Holt, III in the amount of $50,279.62; however, the lien was not introduced into evidence.

35. Mr. Holt has claimed exemptions of $7,763.77 in the "note from CJ Development, LLC to Low Country Land, LLC relating to purchase of Low Country Land, LLC." Holts' schedule C. Ms. Holt has claimed exemptions of $8,801.02 in the "note from CJ Development, LLC to Low Country Land, LLC relating to purchase of Low Country Land, LLC." *Id.* The exemptions are claimed under South Carolina Code Annotated Sections 15-41-30(A)(5) and (A)(7).

36. The Holts' counsel advised the Court that the Holts intend to avoid the judgment lien, if the charging lien is determined to be valid, under 11 U.S.C. § 522(f).

37. The Holts' counsel informed the Court that the payments received on the CJ Note are being held in his trust account and will not be disbursed pending further order of this Court.

## CONCLUSIONS OF LAW

**A. Objection to Exemptions**

When a debtor files a bankruptcy petition, an estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code gives debtors the ability to exempt certain property from the

11

estate. *See* 11 U.S.C. § 522(b)(1). "Section 522(b)(1) of the Code offers the debtor a choice between exempting either the property specified in § 522(d) or the property protected by federal nonbankruptcy law or state law, 'unless the State law that is applicable to the debtor . . . specifically does not so authorize.'" *In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003) (quoting 11 U.S.C. § 522(b)(2)). South Carolina has opted out of the federal exemptions and set forth its own system of exemptions. *See* S.C. Code Ann. §§ 15-41-30; 15-41-35. The rationale behind South Carolina's system of exemptions is "to protect from creditors a certain portion of the debtor's property." *Cerny v. Salter*, 429 S.E.2d 809, 811 (S.C. 1993). An exemption in property goes hand in hand with a discharge of indebtedness to provide honest debtors with a fresh start free from pre-bankruptcy obligations. *See Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 514 (1938). Exemptions find a genesis in the public policy of preserving for debtors certain property that is free from creditor claims, levy, and attachment. "'The historical purpose of . . . exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge.'" *Sheehan v. Morehead* (*In re Morehead*), 283 F.3d 199, 206 (4th Cir. 2002) (omission in original) (quoting H.R. Rep. No. 95-595, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. at 6087). As a general proposition, the exemptions provided under South Carolina law are construed liberally in favor of debtors. *See Ex parte Morrow*, 190 S.E. 506, 508 (S.C. 1937).

The Holts claim exemptions in the CJ Note under sections 15-41-30(A)(5) and (A)(7). Section 15-41-30(A)(5) allows a debtor to exempt his or her "aggregate interest in cash and other liquid assets to the extent of a value not exceeding five thousand dollars, except that this exemption is available only to an individual who does not claim a homestead exemption. The

12

term 'liquid assets' includes deposits, securities, notes, drafts, unpaid earnings not otherwise exempt, accrued vacation pay, refunds, prepayments, and other receivables." Under section 15-41-30(A)(7), otherwise known as the "wildcard exemption," a debtor may exempt his or her "aggregate interest in any property, not to exceed five thousand dollars in value of an unused exemption amount to which the debtor is entitled pursuant to" sections 15-41-30(A)(1) through (6). The maximum amount of the exemptions that may be claimed under section 15-41-30(A) is periodically adjusted by the State Budget and Control Board. *See* S.C. Code Ann. § 15-41-30(B).

First Citizens asserts in its objection that the exemptions set forth in sections 15-31-30(A)(5) and (7) only apply to a debtor's "aggregate interest in any property" and that the Holts do not have an interest in the CJ Note, which is payable to Low Country. Moreover, upon payment of the CJ Note to Low Country, First Citizens argues it, by virtue of its charging lien on the Holts' membership interests, is entitled to the distribution of the payments on the CJ Note to the extent such payments are distributed to members of Low Country. First Citizens asserts that in winding up, after paying its creditors, the remaining assets of a limited liability company are distributed to the members and that as a result of its charging lien, First Citizens, through the state court-appointed receiver, is entitled to collect any such distribution payable to the Holts.

South Carolina Code Annotated Section 33-44-601 lists a number of events that cause the dissociation of a member of a limited liability company, including a member's "becoming a debtor in bankruptcy" or "failing, within ninety days after the appointment, to have vacated or stayed the appointment of a trustee, receiver, or liquidator of the member or of all or substantially all of the member's property obtained without the member's consent or acquiescence, or failing within ninety days after the expiration of a stay to have the appointment

13

vacated." S.C. Code Ann. § 33-44-601(7). Section 33-44-603 lists the effects of a member's dissociation and states that upon a member's dissociation in an at-will company, "the company must cause the dissociated member's distributional interest to be purchased under Article 7." It also provides that upon a member's dissociation, "the member's right to participate in the management and conduct of the company's business terminates, except as otherwise provided in Section 33-44-803, and the member ceases to be a member and is treated the same as a transferee of a member."[6] S.C. Code Ann. § 33-44-603(3). The rights of a transferee are set forth in section 33-44-503, which provides that "[a] transferee who does not become a member shall:"

> (1) receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled;
> (2) receive, upon dissolution, and winding up of the limited liability company's business:
> > (i) in accordance with the transfer, the net amount otherwise distributable to the transferor;
> > (ii) a statement of account only from the date of the latest statement of account agreed to by all the members;
> (3) seek under Section 33-44-801(5) a judicial determination that it is equitable to dissolve and wind up the company's business.

S.C. Code Ann. § 33-44-503(e). Finally, section 33-44-504 sets forth the rights of a creditor of a member:

> (a) On application by a judgment creditor of a member of a limited liability company or of a member's transferee, a court having jurisdiction may charge the distributional interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor and make all other orders, directions, accounts, and inquiries the judgment debtor might have made or which the circumstances may require to give effect to the charging order.
> (b) A charging order constitutes a lien on the judgment debtor's distributional interest. The court may order a foreclosure of a lien on a distributional interest subject to the charging order at any time. A purchaser at the foreclosure sale has the rights of a transferee.

---

[6] Section 33-44-803 allows a "member who has not wrongfully dissociated [to] participate in winding up a limited liability company's business" after dissociation.

    (c) At any time before foreclosure, a distributional interest in a limited liability company which is charged may be redeemed:
        (1) by the judgment debtor;
        (2) with property other than the company's property, by one or more of the other members; or
        (3) with the company's property, but only if permitted by the operating agreement.
    (d) This chapter does not affect a member's right under exemption laws with respect to the member's distributional interest in a limited liability company.
    (e) This section provides the exclusive remedy by which a judgment creditor of a member or a transferee may satisfy a judgment out of the judgment debtor's distributional interest in a limited liability company.

The point in time at which the Holts were dissociated as members of Low Country is unclear at this stage. On the one hand, the Special Referee entered the Order Appointing Receiver on July 31, 2012, which placed the Holts into receivership. Through operation of section 33-44-601(7)(iv), a member is disassociated if he or she fails to have vacated or stayed the appointment of a receiver of him or her within 90 days of the appointment. This was the basis of the Court's statement in the September 7, 2012 Order denying confirmation in the Low Country bankruptcy that the Holts' dissociation would not occur until 90 days after entry of the Order Appointing Receiver, which was October 29, 2012. Additionally, in the addendum to the Disclosure Statement on the effect of the appointment of a receiver for the Holts, Low Country's attorney indicates that the Holts' dissociation would occur on "October 23, 2011."[7] *In re Low Country Land, LLC*, Case No. 11-07554-dd, docket # 82, p. 34. On the other hand, the Disclosure Statement also states that Mr. Holt will manage Low Country and execute any necessary documents post-confirmation, which is inconsistent with section 33-44-603, which provides that a member's right to participate in management of the company terminates upon dissociation. *Id.*, docket # 82, p. 10. Moreover, the Confirmed Plan indicates that the interests of "equity security holders" of Low Country re-vest at confirmation. Furthermore, the Holts are

---

[7] As noted previously, it appears this date should have been listed as October 29, 2012.

15

now arguing that the Special Referee lacked subject matter jurisdiction to issue the Order Appointing Receiver. However, even if the Holts were not dissociated as members of Low Country on October 29, 2012, they were dissociated upon filing their joint chapter 11 petition on April 29, 2013.[8] *See* S.C. Code Ann. § 33-44-601(7)(i).

This leads to the question of the effect of the Holts' dissociation on their distributional interests in Low Country. Under section 33-44-603, a dissociated member is "treated the same as a transferee of a member." Section 33-44-503(e) provides that a transferee of a member who does not become a member has a distributional interest and, upon dissolution and winding up of the company, shall receive the net amount otherwise distributable to the transferor. *See also* S.C. Code Ann. § 33-44-503, cmt. Therefore, the Holts still have distributional interests in Low Country that, assuming the validity of the Special Referee's orders, are subject to First Citizens' charging liens on those interests, as First Citizens had not yet foreclosed on these charging liens at the time the Holts' filed bankruptcy. *See* S.C. Code Ann. § 33-44-504(b). The Holts provide no explanation as to why they claim exemptions in the CJ Note rather than claiming exemptions in their distributional interests in Low Country and present no argument as to what interest they have in the CJ Note, which is payable to Low Country, beyond their distributional interests in Low Country.[9] Similarly, First Citizens has not argued that an exemption cannot be claimed under sections 15-31-30(A)(5) and (7) in a distributional interest in a limited liability company.

---

[8] There may not be a dispute between the parties regarding whether the Holts were dissociated on October 29, 2012, given the Holts' state in their response to First Citizens' motion for relief from stay that "[i]t is undisputed that the Holts did not vacate or stay the appointment of the receiver, and that the appointment of the receiver caused a disassociation of their member interest in Low Country."
The effect of a bankruptcy filing on a receivership is set forth in 11 U.S.C. § 543.

[9] The Holts appear to concede this point as they assert in their response to First Citizens' objection to their exemptions that their "claim of exemptions in distributional rights is proper."

16

The question of whether the Holts may avoid First Citizens' charging liens to the extent they impair the Holts' claimed exemptions is not before the Court at this time.

With respect to the Holts' argument that the Special Referee lacked subject matter jurisdiction when he conducted the supplemental proceedings, the Court finds that it is not necessary to rule on this issue but notes the following in connection with it.  First, principles of comity and federalism are at the core of this country's judicial system and thus any argument that a state court judge's rulings should be treated as void must be closely scrutinized.  Second, the *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" because, with a few exceptions, Congress has "empowered only [the Supreme Court] to exercise appellate authority 'to reverse or modify' a state-court judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284-85 (2005).  Neither party has briefed the impact of the *Rooker-Feldman* doctrine on the issue before the Court.  *See Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) ("While a void *ab initio Rooker–Feldman* exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied) in order to protect the dominant federal role in that specialized area of the law, it has no place here."); *In re James*, 940 F.2d 46, 52 (3d Cir. 1991) ("A federal bankruptcy court may intervene only when the state proceedings are void *ab initio*; it lacks the power where it simply disagrees with the result obtained in an otherwise valid proceeding."); *Singleton v. Fifth Third Bank of W. Ohio* (*In re Singleton*), 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999) ("If the state court did not have subject matter jurisdiction over the prior action, its orders would be void ab initio and subject to attack notwithstanding *Rooker/Feldman*."); *Keeler v. Academy of Am. Franciscan History, Inc.* (*In re Keeler*), 273 B.R.

17

416, 421 (D. Md. 2002) ("There is a split among the circuits as to whether there is a narrow exception to *Rooker–Feldman* for state judgments that are void *ab initio*."); *Arkansas Chronicle v. Easley*, 321 F. Supp. 2d 776, 789 (E.D. Va. 2004) ("But this, too, is not dispositive and does not end the analysis for an exception to the *Rooker–Feldman* doctrine, pertinent here, is that it does not apply where it is pellucidly clear that there is a total lack or want of subject matter jurisdiction for a state court judgment; such judgments are void *ab initio* and do not warrant the benefit of the *Rooker–Feldman* doctrine."). Third, South Carolina Rule of Civil Procedure 53(c) provides that once a case is referred, a special referee "shall exercise all power and authority which a circuit judge sitting without a jury would have in a similar matter." The Order of Reference in Case No. -1765 states that the Special Referee "shall exercise all power and authority which a circuit judge sitting without a jury would have, including but not limited to . . . hearing any issues, including motions, after sale or judgment; issuing any and all Orders and Supplemental Orders . . . ." First Citizens' ex. 1. Fourth, the rules to show cause entered on May 18, 2012, in Case No. -1680 and Case No. -1681 do not appear to have been issued by the Special Referee. First Citizens' exs. 10, 14. Finally, although signed on July 9, 2012, the Special Referee did not enter the Order as to Supplemental Proceedings until July 18, 2012, which is after the July 16, 2012 entry date of the orders of reference for Case No. -1680 and Case No. -1681. First Citizens' exs. 5, 11, 15.

In sum, First Citizens' objection to the exemptions claimed by the Holts in the CJ Note is sustained in part and overruled in part. The objection is overruled to the extent First Citizens argues the Holts do not have distributional interests in Low Country. The objection is sustained to the extent First Citizens asserts the Holts cannot claim exemptions in the CJ Note as opposed

to their distributional interests in Low Country. Therefore, the claimed exemptions at issue are allowed as exemptions in the Holts' distributional interests in Low Country.

**B. Motion for Relief from Stay**

First Citizens seeks relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and (2) "in order to continue its state court proceeding to dissolve Low Country Land, LLC . . . and liquidate its assets." The Disclosure Statement finally approved by this Court in Low Country's bankruptcy states that Low Country "will be dissolved after confirmation and the closing of this case." *In re Low Country Land, LLC*, Case No. 11-07554-dd, docket # 82, p. 4. Low Country's chapter 11 plan has been confirmed, and its bankruptcy case has been closed. With respect to post-confirmation management of Low Country, the Disclosure Statement provides that "[o]ther than executing the necessary documents to affect the transfer of [Low Country's] assets and to dissolve the company with the South Carolina Secretary of State, there will be no post confirmation activity. John W. Holt, II[I] will manage the Debtor and execute the necessary documents."[10] *Id.* at p. 10. Neither First Citizens nor the Holts have addressed the impact of these provisions in the Disclosure Statement, which this Court finally approved and which is referenced in the Confirmed Plan, on the motion for relief from stay before the Court. Therefore, First Citizens' motion for relief from stay is denied without prejudice at this time. Before again moving for relief from stay, First Citizens is directed to consult with the Holts and attempt to reach a consensual resolution of their dispute.[11]

---

[10] It is questionable whether the Holts can waive winding up Low Country and continue to operate it in light of this provision in the Disclosure Statement.

[11] The parties may not be that far apart, given the Holts' statement in their response to the motion for relief from stay that "First Citizens['] rights under the charging lien is limited to the right to receive the distributions from Low Country Land to the Holts."

19

## **CONCLUSION**

For the reasons set forth herein, First Citizens' objection to the exemptions claimed by the Holts in the CJ Note is sustained in part and overruled in part. The objection is overruled to the extent First Citizens argues the Holts do not have distributional interests in Low Country. The objection is sustained to the extent First Citizens asserts the Holts cannot claim exemptions in the CJ Note as opposed to their distributional interests in Low Country. The claimed exemptions at issue, therefore, are allowed as exemptions in the Holts' distributional interests in Low Country. First Citizens' motion for relief from stay is denied without prejudice. Before again moving for relief from stay, First Citizens is directed to consult with the Holts and attempt to reach a consensual resolution of their dispute.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**09/12/2013**



_____
David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 09/12/2013